Corwin, C. J.
That a sale on execution, for less than two-thirds of the appraisement, is illegal, can not be disputed; though, if confirmed, it is good so long as the order of confirmation stands. That the appraisement must be under the writ upon which the sale is made, or a previous writ in the same case, is also clear. True, if *356 there are divers executions levied on the same property, separateappraisements on each' are unncessary; the appraisement and sale-may be upon one of them, and the money be applied upon all, in the order of their priority. This is what was decided in Douglas v. McCoy, 5 Ohio, 522, and is perfectly obvious without the aid of' that decision. But there is not a word in that case that sanctions the idea that it is lawful to sell in one case under an appraisementmade solely in another. This being premised, we proceed to examine the more difficult and important question, whether, as a proper part of the record,, it appears that the lands in question-were sold at less than two-thirds of their appraised value.
In the proceedings before us, it is shown that a ca. sa. issued against the plaintiff in certiorari, on a judgment ^respecting-which no question is attempted to be raised. By the sheriff’s return to that writ, it appears that the then defendant was arrested and subsequently discharged, a levy being made on certain of his lands; which levy, says the sheriff, was made “subject to another ca. sa. execution in favor of Plues & Whitney for $698, damages and costs, dated December 18, 1847, which I had previously levied upon said lands. I caused said real estate to be appraised by the oaths of three disinterested freeholders, residents of said county of Lucas, and two-thirds of the appraised value of said lands, amounting to more than the amount of this execution and the execution in-favor of Plues & Whitney, previously levied, I released the body of the defendant.”
We also find in the record, in the part returned on the suggestion of diminution by the defendant in certiorari, the execution in Plues & Whitney’s case, referred to in the return before mentioned, from which it appears that there was due on Plues & Whitney’s execution :
Damages and costs.................................................. $727 63
Interest from October 28,1844................................... 124 16
While on McBain’s execution there was due:
Damages and costs...................................................$1,540 54
Interest from April 5,1847......................................... 66 00
Due on both executions, December 20,1847...................$2,468 33
*357 But the record also contains a copy of the inquest itself, from which it appears that the lands were appraised at $4,155.60.
It is said, however, that neither of these statements or returns of appraisement can be noticed by the court as cause for setting aside the confirmation of the sale.
To appreciate this objection, it is necessary to examine the several statutes relating to judgments and executions, so far as the provisions for appraisement are concerned.
The language of counsel in stating their proposition that “ the •appraisement is the act of th& freeholders, not of the sheriff,” is calculated to convey the notion that the appraisement is the separate, independent act of the freeholders, *with which the sheriff has no other connection than that of a mere messenger, or temporary custodian, whose duty it is to deliver to the clerk a paper .handed to him by the freeholders for that mere purpose. It would be strange if this were so. Why not require the freeholders to deliver their own certificate ? Would not the evidence of its authenticity be greater, in such a state of the law as that supposed, 'when so •delivered, than when intrusted to a mere middleman or messenger? But such is not the true construction of the law.
Section 10 of the law here referred to (Swan, old ed. 473) provides, “that if execution bo levied upon lands and tenements, the •officer levying such execution shall call an inquest of three disinterested freeholders, who shall be resident within the county where the lands taken in execution are situate, and administer to them an oath or affirmation, impartially to appraise the estate so levied on; .and the said freeholders shall return to the said officer, under their hands and seals, an estimate of the real value in money, of said estate, upon actual view of the promises, forthwith after such view.”
And section 11, referred to by counsel, is in these words: “ That the officer receiving such return, shall forthwith deposit a copy thereof with the clerk of the court from which such writ issued, and immediately advertise and sell such real estate, agreeably to the provisions of this act.”
We find from these particular provisions of the law, that the return of the freeholders is to be an estimate, under their hands and seals, of the real value in money, of the estate levied on, made ■upon actual view of the premises. It can be neither more nor less than this. Of, and in itself, it can not establish even the qualifications of the freeholders as such, or the fact that they were sworn.
*358 I am aware that the form of this return is not uniform throughout the state. In some of the counties, the' form prescribed in Gwynne on Sheriffs, 419, is substantially followed. In that form, the sheriff himself signs and seals with the freeholders the certificate of appraisement — the attesting ^clause being: “In testimony whereof, as well I, the said sheriff, as the inquest aforesaid, have to this appraisement set our hands and seals, on the day and year first above written.” In the same form, the levy is recited, followed by a statement of the calling of the inquest, the qualification of the freeholders as such, and as residents and disinterested men, and the fact that the appraisers were sworn. Then follows the estimate made by the freeholders.
In other parts of the state, the form observed is like that used in the case before us. In this instance, the freeholders themselves assert their qualification as to freoholding, residence, and being sworn by the sheriff, but are silent as to interest. The sheriff merely indorses on the copy filed with the clerk, the name of the case, followed by the words: “Appraisement. A true copy. E. Mack, sheriff.” In the general return of the sheriff to the writ, he does, not refer expressly to either the original or the copy of the freeholders’ return, but declares that he caused the lands “ to be appraised by the oath of three disinterested freeholders, residents of said county of Uucas.” The precise sum of the appraisement is not stated in this particular part of the return, and is only so far indicated as I have before shown.
Perhaps the course pursued by the sheriff in this case, is that, generally taken throughout the state. It is said, in the argument, of counsel, that “ in practice, the copy of the certificate of appraisement has never been considered a part of the sheriff’s return. The form which has been universally adopted, throughout the state, so. far as our knowledge extends, goes no further than to set forth that the inquest was called, the oath administered, and the copy of the' return of the freeholders to the sheriff, filed with the clerk.”
This diversity of practice is caused by the want of particular directions in the statute as to the sheriff’s return. The only sections of the law, other than those already cited, from which any light on this subject is to be had, are the following:
“ Sec. 24. That the sheriff, or other officer, to whom *any writ of execution shall be directed, shall return such writ to the' court to which the same is returnable, on or before the second day *359 of the term to which such writ is made returnable; provided, that all executions issued by the court of common pleas for the county of Hamilton, within twenty days prior to the commencement of any term, may be returned on or before the third Monday of said term,” Swan, old ed. 4817.
“ Seo. 15. That if the court to which any writ of execution shall be returned by the officer, for the satisfaction of which any lands and tenements may have been sold, shall, after having carefully examined the proceedings of such officer, be satisfied that the sale has, in all respects, been made in conformity to the provisions of this act, they shall direct their clerk to make an entry thereof on the journal, that the court are satisfied of 'the legality of such sale, and an order that the said officer make to the purchaser a deed for such lands and tenements.”
The first of the two sections last cited, has not, so far as I am aware, received any judicial construction. But a provision of law, similar, as to the point here considered, to section 15, was subjected to examination in Buckingham & Co. v. Granville Alexandrian Society, 2 Ohio, 360. In that case it was decided that, upon motion for an order to sheriff to make a deed, the court will only look to the execution on which the sale was made, and proceedings under it. It is evident, however, from the language of Hitchcock, J., in the majority opinion, that before confirming a sale, the court will examine whether an appraisement has been regularly made. The following passages are from his opinion:
“ Upon a motion to set aside an execution, as has been before observed, the court can with propriety examine the previous proceedings to ascertain whether there has been any irregularity in the orders of the court, or in the proceedings of the clerk; but upon a motion similar to the present, I apprehend we can look no further than to ascertain whether the officer, in making the sale, has pursued the law. I infer this from the nature of the application, and from the *words of the statute. . . . Let us inquire, then, whether the sheriff, in making the sale, complied with the requisitions of the law. From the documents before us, it is manifest that he caused the lands to be appraised by ‘five respectable, disinterested freeholders ’ of the county; that these freeholders were by him duly sworn before they made the appraisement; that the said appraisers made a return to him of their appraisement, ‘ under their hands and seals; ’ that he forthwith thereafter deposited a copy of *360 the return ‘with the clerk of the court from which the writ issued,’ and that the property was sold for two-thirds of the appraised value,” etc.
Judge Burnet (dissenting as to the limit of the powers which the court might lawfully exercise on the particular motion before it) uses this language: “ "When we speak of the legality of a sheriff’s sale, we understand that all the proceedings connected with it, from the issuing of the execution to the striking off of the land, have been regular.”
Such seems to be the proper construction of the statute under which the sale before us was made.
But there is nothing in the language of the statute,- even thus aided by construction, which settles beyond controversy the manner in which the appraisement shall be brought before the court for examination, on a motion to confirm. The statute prescribes neither form nor substance of the return, except in requiring a return to the writ. What that return shall be, is matter of inference and construction.
I can not hesitate as to the proper construction of the statute, so far as it requires a return of the sheriff’s proceedings, in causing an appraisement. There seems to be some object in requiring the freeholders to return their estimate of value to the sheriff. He has called the inquest, knows the fact that the freeholders are such, are residents, and are disinterested, and has administered to them the proper oath. He therefore should return all these facts as to their qualification, with their estimate or appraisement, to the court. How he should return them is another question. Regularly, I ^should say that he should return the facts respecting their qualification, together with the original estimate, of which a copy has, for the convenience of parties and purchasers, been filed in the clerk’s office. But I do not think it necessary to hold, that the production of the original is necessary to a sufficient return. While that would, certainly, be a strict, compliance with the law, and the most regular course of procedure, I do not, feel prepared to decide that the sheriff may not, instead of making the original estimate part of his return, recite its substance as part of that return,. or refer to the copy of the appraisement on file. But in some of these modes, the material facts of the appraisement must be returned to the court.
In the particular case before us, the record shows a sheriff’s re *361 turn, which., by reference to another execution, states the amount of the appraisement with sufficient certainty for the purpose of this inquiry. Th.e particular return, which includes this statement, is one of a levy.
"VYe are all of opinion, that the statute of February 25, 1848, made the whole of that return (which was not made or required to be made till after the passage of the act) part of the record. That .act provides:
“Seo. 1. That it shall be the duty of the clerk of the court of common pleas, in the several counties of this state, to record at length, in the execution docket now required by law to bo kept by ■.such clerk, the return of the proper officers of all levies made on real estate under executions at law, and the return by the like officers of all subsequent proceedings had by such officers in pursuance of such levies; and the records which shall be so kept as aforesaid, in pursuance of this act, shall be construed to be a part of the records of such court.” 46 Ohio L. 95.
The sheriff lawfully might make return of the appraisement in the form he adopted; and having done so, the act just cited operates to make his return part of the record. For my own part, I am satisfied, for reasons already given, that the original appraisement itself ought, regularly, to be *returned, and that it is a proper part of the record; but it is not necessary to so determine in this case.
The return of sale, in connection with the return on the ca. sa., showing that the lands were sold at less than two-thirds of their ■appraised value, the order of confirmation must be reversed.